(No. 12490.—Cause transferred.)

ALPHONS H. GITS *et al.* Plaintiffs in Error, *vs.* HENRY ULLRICH *et al.* Defendants in Error.

*Opinion filed June 18, 1919.*

1. APPEALS AND ERRORS—*when a freehold is not involved.* A freehold is not involved where the title thereto is not put in issue in any manner by the pleadings and there are no assignments of error touching the freehold.

2. SAME—*when freehold is not involved in suit to rescind contract for purchase of land.* A freehold is not involved in a suit to rescind a contract for the purchase of land where the only issues raised by the bill are whether or not there is a partnership existing between the defendants, one of whom made the contract, and whether or not there has been such a breach of the contract as entitles the complainants to tender back the property and have the purchase money returned.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. M. W. PINCKNEY, Judge, presiding.

HAASE, HANLEY & HOWARD, for plaintiffs in error.

MORTON T. CULVER, for defendant in error Henry Ullrich.

HOYNE, O'CONNOR & IRWIN, for defendant in error Emmet F. McElroy.

Mr. JUSTICE STONE delivered the opinion of the court:

The circuit court of Cook county sustained a demurrer to the amended and supplemental bill of the complainants, seeking to establish a partnership between the defendants in error in a real estate transaction, to rescind a contract made with one of them and to recover the money paid for the lands by the plaintiffs in error, upon the tender into court of a special warranty deed of the premises in question covering the time the record title has been in the complainants.

The contract in question is in the form of a letter dated Chicago, Illinois, July 21, 1917, addressed to defendant in error Henry Ullrich, alleged in the complainants' bill to have been prepared by or under the direction of Ullrich. After the description of the land in question the letter provides for a total consideration of $8850, of which $500 was earnest money and $4500 was to be paid on demand when a good and sufficient warranty deed and guaranty policy issued by the Chicago Title and Trust Company was delivered, showing the title to be free and clear of all incumbrances. The remaining $3850 was to be paid in monthly installments of $500 each. The letter further provides that the complainants were purchasing the premises in question on the following conditions: (1) That the legal survey of sewer datum will be procured, to the end that complainants must be assured good and ample drainage at a depth of six feet below the surface, with an outlet at Fifty-sixth avenue; (2) that an agreement or letter from the People's Gas Light and Coke Company, to the ef-

fect that gas will be furnished on or before May 1, 1918, was to be secured; (3) that an agreement or letter from the water extension department of the city of Chicago be procured, to the effect that water be furnished from the main at Archer avenue; (4) that the defendants would negotiate with the Indiana Harbor Belt Railroad Company for the extension of a lead or side-track to the premises in question. The complainants deposited the sum of $500 as earnest money and agreed to complete the contract of purchase within thirty days after date of the letter. The complainants further agreed in said letter to furnish from a licensed architect of the city of Chicago full plans, blueprints and specifications of their proposed manufacturing plant and apply to the defendants for a loan of $30,000 if that amount were needed and to be furnished a larger amount if necessary, and agreed to pay the loan at the rate of $2500 each six months until paid. The building was to be completed not later than May 1, 1918. It is further stated in said letter that in case good and perfect title to the premises therein described is not procured, the $500 paid down as earnest money is to be returned to complainants. The letter is signed by Alphons H. Gits, Remi Gits and Gits Bros. Manufacturing Company. At the time set out in this letter the record title to the premises was in Emmet F. McElroy. The bill alleges that this fact was unknown to the complainants at the time the letter was written and until the delivery of a deed for the property executed by McElroy and his wife. The complainants paid Ullrich $500 at the time this letter was written and $4500 at the time of the delivery of the deed to the premises, at which time notes amounting to $3850 were given, thereby paying the purchase price in full.

It is alleged in the bill of complaint that gas, water or switch-track connections have never been supplied, and that such were necessary to the proper prosecution of complainants' business, without which the land in question would

288 — 34

never have been purchased; that when complainants accepted the deed to the premises Ullrich told them that he was not ready to furnish the contract or agreement from the gas company or the railroad company, for the reason that these things took time, petitions had to be signed and other formalities performed; that he had an established business in Chicago and had had for many years, and that his oral promise for these things was good; that if complainants did accept the deed and pay the consideration he would procure contracts for gas, water and switch-track as soon as possible,—certainly before the first note fell due; that complainants relied on these representations, paid the consideration and accepted the deed for the premises; that Ullrich immediately discounted or otherwise disposed of the notes; that none of the conditions have been performed except to furnish a survey and title guaranty policy; that Ullrich never intended to procure these contracts, but, fraudulently contriving by these promises, at the time induced the complainants to pay cash and give their notes and accept the deed. It is further alleged in the bill that the complainants were engaged in making oil cups; that they had many war contracts with limits and severe penalty clauses; that they occupied leased quarters; that the lease would expire April 30, 1918; that the defendants knew, or should have known, that the complainants would have to have gas and water,—at least these facts were all made known to Ullrich before the making of said offer. The bill further alleges that on September 21, 1917, the complainants notified McElroy and Ullrich of their repudiation and rescission of the contract and made demand for the return of their money. Attached to the bill and made a part thereof are copies of agreements between defendants in error relating to said property and other property, which plaintiffs in error contend establish a partnership between defendants in error.

The first question presented on this record is whether or not this court has jurisdiction to review the case. The

only ground on which a review here may be had on this writ of error is that a freehold is involved. If a freehold is not involved the cause should be transferred to the Appellate Court for the First District. Upon an examination of the record and the issues raised therein we are of the opinion that a freehold is not involved in this case. Plaintiffs in error are seeking to establish a partnership and to have returned to them the money they paid as the purchase price of land because of the failure of Ullrich to perform certain acts which plaintiffs in error say were inducements to them to buy the property. In order to do equity they tender back the property purchased. In a suit for specific performance to compel the execution of a conveyance of a freehold estate a freehold is involved, but plaintiffs in error have not sought such relief in this case. Where the title to the freehold is not put in issue in any manner by the pleadings and there are no assignments of error touching the freehold a freehold is not involved. (*Kesner* v. *Miesch,* 204 Ill. 320.) A freehold is involved when it is sought to cancel a deed purporting to convey the freehold as a cloud on complainant's title, but no such issue is raised here. The issues raised by the bill in this case are, as we have seen, whether or not there was a partnership existing between defendants in error, and whether or not defendants in error were guilty of a breach of a contract made by one of them and relating not to the freehold but to certain acts to be performed for the benefit of plaintiffs in error, which, they say, induced them to purchase the property. Such issues do not involve a freehold.

The cause will therefore be transferred to the Appellate Court for the First District.          *Cause transferred.*